IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ECORE INTERNATIONAL, INC., | |
| Plaintiff, | |
| v. | CIVIL ACTION NO. 12-2729 |
| PAUL DOWNEY, PLITEQ, INC., and DART ADVANTAGE WAREHOUSING, INC., | |
| Defendants. | |

**MEMORANDUM**

**SCHMEHL, J.**                                                                                                   **January 6, 2015**

Plaintiff, a flooring products company, has moved for summary judgment on several claims related to Defendants' alleged relabeling and resale of Plaintiff's goods as their own. As discussed more fully below, the Court will deny summary judgment on all counts. In short, factual disputes as to whether there was an agreement to carry out the relabeling prevent summary judgment on Count I; Plaintiff has not established all necessary elements for Count II because it has relied on a presumption that the public was misled, but the law in this Circuit does not call for such a presumption; and the state law claims parallel the federal claims, so summary judgment must be denied on Count III for the same reasons.

Factual and Procedural Background

Plaintiff Ecore is a recycled rubber flooring products company located in Lancaster, Pennsylvania. Goods produced by Ecore include flooring underlayments designed to reduce noise. Ecore previously conducted business under the name Dodge-

Regupol, Inc., and the president and CEO in both incarnations is Art Dodge. Defendant Paul Downey owns an Ontario engineering consulting company called CSR. Downey/CSR had an arrangement to provide consulting services to Ecore; that arrangement appears to be the primary substance of another suit in this Court, pending before the Honorable R. Barclay Surrick. Downey also founded and is the sole shareholder and an officer of Defendant Pliteq, Inc., also in the business of sound-control flooring products.

The alleged wrongdoing that forms the basis of this suit is a scheme by Defendants to relabel, misrepresent, and resell Ecore products as Pliteq products. Defendants purchased Plaintiff's products through third parties, initially buying unlabeled goods and adding Pliteq labels. Later, when Plaintiff stopped selling unlabeled products for unrelated reasons, Defendants had workers remove the Ecore labels and replace them with Pliteq ones. This part of the operation was performed by employees of Defendant Dart Advantage Warehousing, Inc, at Dart's facility. Dart apparently settled out of this case prior to its transfer to the undersigned.[1] Defendants took a number of precautions to prevent the relabeling activity from being discovered, including instructing employees not to mention Pliteq when communicating with Plaintiff. Beyond the relabeling itself, Defendants also published a website and downloadable marketing brochures about the rebranded product, misrepresenting that Pliteq created and manufactured it. The materials correctly state that the product was manufactured in Lancaster, but obscure the fact that it was manufactured there by Ecore rather than Pliteq.

---

[1] The docket does not reflect any dismissal of the action with respect to Dart, which therefore remains a Defendant of record. Plaintiff should take steps to clear up the record on this point.

Defendants, for their part, allege there was an email agreement between Downey and Dodge to engage in the relabeling as a way of dealing with some competitors in the market. Defendants also say Ecore has pursued similar private labeling strategies with other partners. Plaintiff denies the agreement, disagrees as to the meaning of the alleged proposal, and denies that Dodge even read the part of the email at issue.

The complaint in this matter was filed May 18, 2012, and Plaintiff's motion for summary judgment was filed January 7, 2013. In May 2013, the Honorable Stewart Dalzell put the case in suspense, and it was then transferred to the undersigned in July 2013. More recently, both this case and Judge Surrick's case involving the parties were referred to Magistrate Judge Richard A. Lloret for joint settlement efforts, which were unsuccessful, so the Court now rules on the motion for summary judgment.

Discussion

Plaintiff brings three claims: Count I, reverse passing off; Count II, false advertising; and Count III, common law unfair competition. The first two claims arise under the federal Lanham Act, specifically 15 U.S.C. § 1125(a), which provides:

(a) Civil action

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--

    (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

3

> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

A variety of claims with different focuses grow out of this provision; the specific requirements of the two types of claim in this case are discussed below. The final claim covers the same ground, but under state law.

Plaintiff has moved for summary judgment, so the Court must decide if Plaintiff is entitled to judgment as a matter of law and of course assesses Plaintiff's claims by viewing the facts in light most favorable to Defendants and denying the motion if a genuine issue of material fact exists such that a reasonable jury could find for Defendants. *See Rosano v. Twp. of Teaneck*, 754 F.3d 177, 184 (3d Cir. 2014).

Count I

Plaintiff's first claim under the section quoted above alleges "reverse passing off." Relatively simply put:

> "Passing off" occurs when a producer misrepresents his own goods as someone else's. *See Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 28 n. 1, 123 S.Ct. 2041, 156 L.Ed.2d 18 (2003). "Reverse passing off" occurs when the producer misrepresents someone else's goods as his own. *Monsanto Co. v. Syngenta Seeds, Inc.*, 443 F.Supp.2d. 648, 651 (D. Del. 2006).

*Maule v. Philadelphia Media Holdings, LLC*, 710 F. Supp. 2d 511, 517 (E.D. Pa. 2008). Here, Plaintiff claims Defendants misrepresented Plaintiff's goods as their own by switching the labels and claiming to have manufactured them. To establish a reverse passing off claim, a plaintiff must show:

4

"(1) that the work at issue originated with the plaintiff; (2) that [the] origin of the work was falsely designated by the defendant; (3) that the false designation of origin was likely to cause consumer confusion; and (4) that the plaintiff was harmed by the defendant's false designation of origin." *Syngenta Seeds, Inc. v. Delta Cotton Co-op., Inc.*, 457 F.3d 1269, 1277 (Fed. Cir. 2006) (quoting *Lipton v. Nature Co.*, 71 F.3d 464, 473 (2d Cir. 1995)).

Defendants argue Plaintiff has not established elements two, three, and four. Defendants' primary argument, which they direct at the second element but is perhaps best understood as undermining the claim more generally, is that Plaintiff actually agreed to the relabeling arrangement. Defendants point to a September 28, 2010, email from Downey to Dodge that appears to discuss competitors' products and price comparisons; frankly, the email is difficult to comprehend fully from an outside perspective, even with the benefit of some deposition testimony. Defendants argue that Downey was proposing a relabeling plan with the part of the email that says:

> If Irvine is willing to accept alternates, I have told Mark that we will sell a private label of QT [Ecore's product brand], called Pliteq GenieMat, through our distributor at $0.75/SF. It won't have the same level of testing, or say QT on it, but at least is comparable with the SoundSeal testing, and we can provide a letter saying it is a private label as manufactured by Ecore. This should alleviate their need for lowest price.

Defendants further argue that Dodge's email response the next day demonstrates an agreement to the relabeling plan: "F*** them…cut their throat on price….this is a war and our nuclear device is not ready yet. The USRR suit is going to cost a f***ing fortune to defend. Take no prisoners…we'll clean up the market mess once we have the reissue in hand" (ellipses in original). Plaintiff asserts Dodge did not even read the relevant portion of Downey's email at the time, and further notes that Defendants' conduct was

5

not in line with the alleged proposal because the relabeling was never revealed by any sort of "letter saying it is a private label as manufactured by Ecore." Plaintiff also alleges Defendants resold the products at a *higher* price, which does not seem in keeping with the alleged agreement.

Given the highly factual nature of the parties' contentions regarding what the email meant, whether Dodge even read it, and whether the parties' conduct corroborates the existence of the agreement, the alleged agreement to engage in relabeling is properly a matter for the jury to assess. *See W. v. IDT Corp.*, No. CIV.A.01-4372(WHW), 2008 WL 762459, at *5 (D.N.J. Mar. 19, 2008) ("While in general the existence of a contract is a question of law for the Judge to decide, '[w]hen the evidence is conflicting it is for the jury to determine whether a contract does in fact exist, and, if so, what are its terms?'" (quoting *American Lumber & Mfg. v. Atlantic Mill & Lumber Co.*, 290 F. 632, 634 (3d Cir. 1923))); *see also Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 589-93 (3d Cir. 2009) (Jordan, J., concurring in part and dissenting in part) ("I believe there remains a material question of fact as to the parties' intent, and, accordingly, would let a jury determine whether there was a contract at all."); *Recovercare, LLC v. Fairweather*, No. CIV.A. 09-CV-2911, 2009 WL 2837665, at *6 (E.D. Pa. Sept. 1, 2009) ("Given the current state of the pleadings and additional evidence introduced by the parties, there certainly remain genuine issues of material fact that must be determined in regards to the existence of a contract, as well as the terms of any agreement. Summary Judgment, therefore, is inappropriate at this stage."); *Brandon Int'l, Inc. v. Clark-Reliance Corp.*, No. 2:07-CV-0175, 2008 WL 2571693, at *5 (W.D. Pa. June 25, 2008) (holding, where the alleged agreement contained apparently binding language but the parties' conduct

pointed in conflicting directions, that "the question of whether the parties intended to be bound by the Ocotber [sic] Offer to Purchase is a question of fact for a jury to determine"); *T.A.M., Inc. v. Gulf Oil Corp.*, 553 F. Supp. 499, 504 (E.D. Pa. 1982) (holding, where there were express contracts lacking the relevant terms but plaintiffs offered evidence that "de facto exclusive dealing agreements" existed alongside the express contracts, that "[w]hether or not an exclusive dealing contract existed is a material issue of fact in dispute, one which would be appropriate for jury consideration"). Plaintiff's motion for summary judgment on Count I must be denied at least for this reason, and the Court need not address arguments as to the other elements of the reverse passing off claim.[2]

Count II

Plaintiff's second claim is for false advertising and concerns largely the same misconduct, namely, the misrepresentations as to the source of the products on the website and in marketing materials. The alleged email agreement might have an impact on this claim as well, but the parties focus on whether the literally false nature of the misrepresentations means that Plaintiff need not actively demonstrate certain of the

---

[2] Defendants also attack the second element of the reverse passing off claim by arguing that this sort of relabeling or private labeling is common in the industry. The sole case cited on this issue is *Banff Ltd. v. Express, Inc.*, 921 F. Supp. 1065 (S.D.N.Y. 1995). The relevant holding of *Banff* is rather limited. The court held that because it was common in the clothing industry for retailers to add their own labels, retailer labels do not express or are not understood by consumers as a designation of origin at all, and thus they cannot constitute false designations of origin for the second element of a reverse passing off claim. *Id.* at 1072. Here, because the examples Defendants offer only involve Plaintiff's own private labeling agreements with other businesses, Defendants really have not established that it is a common industry practice. Further, Defendants not only relabeled the goods but made express statements of origin on their website and in marketing materials, so Defendants' argument on this point probably fails. But the existence of private labeling agreements between Plaintiff and others does provide a potential enhancement to the credibility of Defendants' allegation that such an agreement also existed between Plaintiff and Defendants, making that issue even more rightly the purview of the jury.

claim's elements. Because the Court holds the elements cannot be presumed, it will deny summary judgment on this count as well.

The elements of a Lanham Act claim for false advertising, or false or misleading representation of a product, are:

> 1) that the defendant has made false or misleading statements as to his own product [or another's];
>
> 2) that there is actual deception or at least a tendency to deceive a substantial portion of the intended audience;
>
> 3) that the deception is material in that it is likely to influence purchasing decisions;
>
> 4) that the advertised goods traveled in interstate commerce; and
>
> 5) that there is a likelihood of injury to the plaintiff in terms of declining sales, loss of good will, etc.

*Warner-Lambert Co. v. Breathasure, Inc.*, 204 F.3d 87, 91-92 (3d Cir. 2000) (alteration in original) (quoting *Johnson & Johnson-Merck Consumer Pharmaceuticals Co. v. Rhone-Poulenc Rorer Pharmaceuticals, Inc.*, 19 F.3d 125, 129 (3d Cir. 1994)). Plaintiff's summary judgment briefing only presents a case for the first element and argues that the second element, actual deception or a tendency to deceive, and the third, materiality of the deception, may be presumed in cases where the representations at issue are literally false rather than simply misleading.[3]

Plaintiff cites a number of cases both in and out of this Circuit for the principle that "actual deception or a tendency to deceive is presumed if a plaintiff proves that an advertisement is unambiguous and literally false." *Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.*, 653 F.3d 241, 248 (3d Cir. 2011). The presumption appears to cover

---

[3] The interstate commerce element is uncontroversial, and Plaintiff points to its argument on Count I as to damages for the fifth element.

materiality as well. *See Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 943 (3d Cir. 1993) ("When a merchandising statement or representation is literally or explicitly false, the court may grant relief without reference to the advertisement's impact on the buying public." (quoting *Coca-Cola Co. v. Tropicana Prod., Inc.*, 690 F.2d 312, 317 (2d Cir. 1982))); *see also Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 497 (5th Cir. 2000).

However, at least in the Third Circuit, this presumption is only effective when seeking injunctive relief rather than damages: "[The defendant] states that to obtain monetary damages in a § 43(a) Lanham Act false advertising case, a plaintiff seeking such damages must prove actual consumer deception, even if the claim is based on 'literal falsity.' We believe that this is an accurate statement of the law." *Mun. Revenue Serv., Inc. v. Xspand, Inc.*, 700 F. Supp. 2d 692, 716 (M.D. Pa. 2010).[4] At least one court

---

[4] The *Xspand* court's confidence in the accuracy of that statement was supported by extensive citation:
> *See Gallup, Inc. v. Talentpoint, Inc.*, 2001 WL 1450592 *13 (E.D.Pa. 2001) (emphasis added) ("Where plaintiff seeks *injunctive relief*, and shows that a claim is literally false, a court need not consider whether the public is misled. Where, however, a plaintiff seeks *monetary damages*, proof of actual deception is required. This does not mean that plaintiff bears the burden of detailing individualized loss of sales; however, plaintiff must show some customer reliance on the false advertising."); *see also Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 941–43 (3d Cir. 1993) (affirming trial court decision to grant injunctive relief but deny monetary relief in spite of finding literal falsity); *Parkway Baking Co. v. Freihofer Baking Co.*, 255 F.2d 641, 649 (3d Cir. 1958) ("In cases of injunction ... there seems to be no requirement that purchasers actually be deceived, but only that the false advertisements have a tendency to deceive.... While it would be going too far to read the requirement of customer reliance out of this section so far as damages are concerned, we believe that this is a recognition that, as with most equitable relief by way of injunction, Section 43(a) may be asserted upon a showing of likelihood of damage without awaiting the actuality."); *Bracco Diagnostics, Inc. v. Amersham Health, Inc.*, 627 F.Supp.2d 384, 482 (D.N.J. 2009) (for the proposition that "literal falsity, without more, is insufficient to support an award of money damages to compensate for marketplace injury*); " Synygy, Inc. v. Scott–Levin, Inc.*, 51 F.Supp.2d 570, 575 (E.D.Pa. 1999) ("Thus, a plaintiff seeking monetary rather than injunctive relief must show actual damages rather than a mere tendency to be damaged.").

*Xspand*, 700 F. Supp. 2d at 716; *see also Warner-Lambert Co. v. Breathasure, Inc.*, 204 F.3d 87, 92 (3d Cir. 2000); *Regscan, Inc. v. Brewer*, No. CIV.A. 04-6043, 2007 WL 879420, at *4 n.1 (E.D. Pa. Mar. 16, 2007) ("More recent cases have also recognized the distinction between the proof required to establish a claim for damages as opposed to one for injunctive relief under Section 43(a).").

in this Circuit has directly confronted a plaintiff taking the very approach Ecore takes here and ruled against that plaintiff:

> Instead of even attempting to point to evidence that customers were actually deceived or relied on the advertising statement, [plaintiff] argues that Third Circuit law does not require it to show actual reliance if the statements were literally false. [Plaintiff] confuses what is required of a plaintiff who seeks injunctive relief and what is required of a plaintiff who seeks damages.

*Syncsort Inc. v. Innovative Routines Int'l, Inc.*, No. CIVA 04-3623 (WHW), 2008 WL 1925304, at *11 (D.N.J. Apr. 30, 2008).

Plaintiff seems to recognize that the literal falsity presumption may not apply as clearly in the context of damages, specifically noting that "Courts have also awarded monetary damages in these types of cases." Plaintiff's Reply Brief at 16. But Plaintiff supports this statement only with a few out-of-circuit cases. *See id.* Third Circuit opinions do not agree. Though they may not be solely about injunctive relief, neither *Pernod*, 653 F.3d 241, nor *Facenda v. N.F.L. Films, Inc.*, 542 F.3d 1007 (3d Cir. 2008), is on-point enough to overcome the clear statements of the law in this Circuit set forth above. *Pernod* simply quotes the rule about the literal falsity presumption without reference to injunction or damages, and goes on to support the general notion that sometimes courts can conclude as a matter of law that language either is or is not misleading (which is really more about the first element anyway). *Pernod*, 653 F.3d at 248-55. Because the court ruled that the language in that case was not even misleading, the issue of whether literally false language entails a presumption of consumer deception never arose. While the statements in this case appear to be literally false and thus certainly misleading under the first element of the claim, the precedent of *Pernod* does not indicate that Plaintiff has thereby automatically satisfied the second element concerning consumer deception.

*Facenda* is about endorsement and as such is simply in too different a context to overrule the various precedents cited above without being explicit. *See* 542 F.3d at 1021; *see also Xspand*, 700 F. Supp. 2d at 716-17 n.45 (discounting the effect of *Facenda* on this issue).

Plaintiff's reliance on the literal falsity of the misrepresentations is insufficient to conclude as a matter of law that it has made its case on all the necessary elements of a false advertising claim. After several pages of argument as to why deception and materiality may simply be presumed, Plaintiff refers almost off-hand to evidence that two actual customers were misled. Such a bare statement cannot establish a crucial legal element thoroughly enough to grant Plaintiff's motion for summary judgment. Moreover, the incidents involved customers confused by a sales representative who wrongly tried to push the customers into purchasing Defendants' products rather than Plaintiff's; that confusion seems to have had little or nothing to do with the website and brochure statements at issue. Plaintiff's motion must be denied as to Count II as well.

Count III

The parties have agreed that the state law claims under Count III are to be analyzed in the same way as the federal claims (except for the interstate commerce aspect, which was not relevant to the above analysis). *See R.J. Ants, Inc. v. Marinelli Enterprises, LLC*, 771 F. Supp. 2d 475, 489 (E.D. Pa. 2011) ("A Pennsylvania common law cause for unfair competition is identical to the Lanham Act, without the federal requirement of interstate commerce."). Therefore, summary judgment on Count III will be denied for the same reasons set forth above.

Conclusion

      Summary judgment will be denied on all counts and the case will proceed. An appropriate order follows.